George Cenedella and Marietta Cenedella v. Commissioner.
Cenedella v. Commissioner
Docket No. 311-71.
United States Tax Court
T.C. Memo 1972-79; 1972 Tax Ct. Memo LEXIS 177; 31 T.C.M. (CCH) 315; T.C.M. (RIA) 72079; March 30, 1972, Filed. Maurice H. Kramer, 44 School, Boston, Mass., for the petitioners. Barry J. Laterman, for the respondent. 316 FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1966 in the amount of $1,178.17 and an addition to the tax under section 6653(a) [1] in the amount of $58.91. One of the adjustments on which the deficiency determination was based was conceded by petitioners at the trial. The only issue for decision is whether respondent erred in his determination of the amount of petitioners' adjusted basis under section 1016(a) for a house which they sold in 1966. *178 Findings of Fact George Cenedella and his wife, Marietta Cenedella (hereinafter referred to as petitioner), were legal residents of Cohasset, Massachusetts, at the time they filed their petition. They filed a joint Federal income tax return for 1966 with the district director of internal revenue, Boston, Massachusetts. On or about September 19, 1958, petitioner purchased a house in Hingham, Massachusetts, for $13,500. During the following year, she had the house divided into two apartments; she rented the top floor, and she used the ground floor as her residence. This conversion of the house required the construction of a new outside stairway to the upstairs and the addition of a kitchen to that part of the house. In addition to these modifications, petitioner, between 1958 and 1966, had new plumbing and heating systems installed. The new plumbing included the installation of a new bathroom and a laundry room in the downstairs portion of the house. She also had the electrical wiring and fixtures in the house replaced. Structural modifications were also made to the house during this period. The floors of the front porch, the bathroom, the laundry room, and the kitchen were *179 raised and leveled. During the leveling of the kitchen floor, it was discovered that one of the beams supporting the floor had been damaged by a fire at some earlier time; this beam was replaced. When these repairs were completed, petitioner proceeded to have the kitchen on the ground floor remodeled, expanding it into what had been an old shed at the rear of the house. During this process, she had new sliding glass doors installed in the portion which was to serve as a dining area. She also had a picture window and new cabinets built into the kitchen. When the structural work on the house had been completed, petitioner had it painted inside and out, and wall-to-wall carpeting installed in the downstairs portion. She also had repairs made to the garage, including the installation of two new doors at the front and the creation of a new entrance at the rear. In addition, she had the front part of the garage roof reshingled and the rear portion patched. Most of these improvements were financed with the proceeds of mortgage loans which petitioner obtained on her house. Between 1963 and 1966, when she sold the house, the liabilities secured by such mortgages increased from $11,180 *180 to $22,407.06. Petitioner sold the house in 1966 for $23,500. In connection with this sale, she paid a commission of $750, attorney's fees of $50, and transfer taxes and recording fees of $60.15. Respondent determined that petitioners "realized a long-term capital gain of $9,876 from the sale of the house" which he computed as follows: Selling price
$23,500.00
Original cost of house and land
$15,000.00
Cost of improvements 2,814.00 $17,814.00
Depreciation - allowed or allowable
House
$ 2,220.00
Improvements 1,970.00
($4,190.00)
Adjusted basis 13,624.00
Unreported capital gain
$ 9,876.00 At the trial, respondent conceded that the difference between the $13,500 original cost of the residence and the $15,000 cost referred to in the notice of deficiency constitutes part of the cost of the improvements of the property. 317 Ultimate Findings of Fact Petitioner spent a total of $9,000 on improvements to the house. Of this amount, $4,314 has been allowed by respondent in computing petitioner's adjusted basis in the property. Petitioner is entitled to take into account further additions to basis in the total amount of $4,686 *181 in computing the gain realized from the sale. Opinion In attempting to establish the costs of the improvements which she made to her residence, petitioner relies primarily upon her own oral testimony, corroborated to some extent by a few bills and the mortgage loans which she testified that she obtained to finance the improvements. While we accept petitioner's general testimony with respect to the nature and extent of the improvements, we are not convinced that her memory of the amounts of the costs of the various items was wholly accurate. At one point, for example, she testified that she paid $250 for some excavation work; yet the bill for that work was in the amount of only $100. In these circumstances, we cannot base our Findings exclusively upon her recollection of the amounts of the expenditures. On the other hand, the modifications which petitioner made to her house were extensive. These modifications, detailed in our Findings, obviously cost a substantial amount of money; most of these funds were obtained by borrowing against the value of petitioner's house. We note that the liability secured by this house increased by approximately $11,000 between 1963 and 1966. After *182 carefully reviewing all the evidence, we find the total cost of the improvements to have been $9,000. [2] (C.A. 2, 1930).
Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.↩
2. Of course, the amount realized on the sale of the house should be reduced in the Rule 50 computation to reflect the expenses of sale, referred to in our Findings, which were borne by petitioner.↩